IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONNIE DAVID STRINGER,

    Petitioner,                     No. CIV S-09-2980 GEB EFB P

    vs.

JOHN MARSHALL,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

                             /

       Petitioner is a state prisoner with counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. Respondent moves to dismiss on the ground that the petition is untimely under 28 U.S.C. § 2244(d). The court agrees that the petition is untimely for the reasons that follow and accordingly recommends that the motion to dismiss be granted.

**I.    Procedural History**

       Petitioner was convicted of the second degree murder of his wife, Cynthia, in 1996 following a jury trial. Dckt. No. 10, Am. Pet. at 5, 6. Petitioner's direct appeals of his conviction terminated on February 3, 1998, when the California Supreme Court denied his petition for review. Dckt. No. 19, Resp.'s Mot. to Dism., Ex. B.

       Petitioner filed an application for a writ of habeas corpus in the Solano County Superior Court on January 5, 2006. Am. Pet. at 5. The court held an evidentiary hearing, but denied the

petition on February 26, 2008. *Id.* Petitioner then filed a habeas application in the California Court of Appeal on June 6, 2008. Resp.'s Mot. to Dism., Ex. C. That petition was denied on April 6, 2009. *Id.* On May 13, 2009, petitioner filed a habeas application with the California Supreme Court, which was denied on October. 14, 2009. *Id.*, Ex. D. The instant petition was filed on October 19, 2009. Dckt. No. 1.

**II.     Statute of Limitations – Governing Law**

A one-year limitations period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review, or the date on which the factual predicate of
a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

**A.     Statutory Tolling**

There is no statutory tolling of the limitations period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed . . . ." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). However, once a petitioner properly files a state post-conviction application the period is tolled, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). In California, a properly-filed post-conviction application is "pending" under § 2244(d)(2) during the intervals between a lower court decision and filing a new petition in a higher court if the second petition was filed within a "reasonable time" after the denial of the first. *Evans v. Chavis*, 546 U.S. 189, 197 (2006); *Carey v. Saffold*, 536 U.S. 214, 223 (2002). Generally, a gap of 30 to 60 days between state petitions is considered a "reasonable time" during which the statute of limitations tolled, but six months is not reasonable.

*Evans*, 546 U.S. at 210 (using 30 to 60 days as general measurement for reasonableness based on other states' rules governing time to appeal to the state supreme court); *Saffold*, 536 U.S. at 219 (same); *Waldrip v. Hall*, 548 F.3d 729, 731 (finding that six months between successive filings was not a "reasonable time").

A federal habeas application does not provide a basis for statutory tolling. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

### B. Equitable Tolling

The limitations period may also be equitably tolled where a habeas petitioner establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). In light of this pronouncement, the Ninth Circuit has reiterated that the threshold necessary to trigger equitable tolling is very high, and clarified that equitable tolling only applies where a petitioner shows that despite diligently pursuing his rights, some external force *caused* the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009).

Petitioner has the burden of showing facts entitling him to statutory and equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

### III. Analysis

Here, the California Supreme Court denied review on February 3, 1998. Resp.'s Mot. to Dism. Ex. B. The conviction became "final" within the meaning of § 2244(d)(1)(A) when the time for filing a petition for writ of certiorari expired 90 days later, on May 4, 1998. Supreme Ct. R. 13; *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Unless a later start date is justified due to a state-created impediment to filing (§ 2244(d)(1)(B)), a newly-recognized constitutional right (§ 2244(d)(1)(C)), or the diligent discovery of a new factual predicate (§ 2244(d)(1)(D)), the one-year limitations period commenced running the following day. 28 U.S.C. § 2244(d)(1)(A); *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, under

§ 2244(d)(1)(A), petitioner had until May 4, 1999 to file his federal habeas petition. However, he did not file the instant petition until October 19, 2009. Unless a later limitations-period start-date is justified pursuant to § 2244(d)(1)(B)-(D) or the limitations period is tolled, this federal petition is over ten years late.

### A.   Proper Limitations Period Start-Date

Under section 2244(d)(1)(D), the limitations period may begin on "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." Petitioner argues that, pursuant to this provision, the limitations period should not be deemed to have started until "late 2005." Pet'r's Opp'n to Resp.'s Mot. to Dism. (hereinafter "Pet'r's Opp'n") at 8. Petitioner contends that this date is when a reasonable investigation would have uncovered new facts underlying his claims that he is innocent, that trial counsel was ineffective for failing to present a third-party culpability defense, and that appellate counsel was ineffective for failing to argue that trial counsel was ineffective. Some detail of the factual bases of these claims is necessary to resolve whether § 2244(d)(1)(D) may be applied in this case.

Petitioner alleges as follows: Petitioner or his mother, Anita Stringer, advised trial counsel Michael Marowitz prior to trial that petitioner's brother-in-law, Randy Russell, "was a possible suspect for a third-party culpability defense." Resp.'s Reply, Ex. F, Decl. of Anita Stringer in Supp. of Pet. for Writ of Habeas Corpus in Solano County Super. Ct (hereinafter "Anita Stringer Decl.") at ¶¶ 4-10; *id.*, Ex. G, Decl. of Pet'r in Supp. of Pet. for Writ of Habeas Corpus in Solano County Super. Ct. (hereinafter "Lonnie Stringer Decl.") at ¶¶ 4-10; *see also* Dckt. No. 11, Mem. of P's & A's in Supp. of Am. Pet. at 4-8. Suspicion of Mr. Russell was based on the following facts, as related by Anita Stringer:

> [T]wo nights before Cynthia's murder, my home was vandalized. The vandal had painted black on the family photographs throughout the home, except for photos of Crystal and Randy Russell. [(Crystal was Randy's estranged wife and is petitioner's sister.)] Further, the vandal had spray-painted the words "Death" and "Daughter Killer" on the walls and beds in the home. Nothing of any value was taken from my home. Mr. Marowitz was told that Randy was upset with my family because Crystal had been excommunicated from our church.

> In addition, . . . Mr. Russell drove by Lonnie's home the night before the murder with his son, Michael in the car.
>
> . . . [T]he following morning, Mr. Russell had told Crystal Russell, my daughter, that he needed to speak with Lonnie and Cynthia. At approximately 6:30am, Crystal Russell stood by as Mr. Russell made a call to Lonnie's home.
>
> . . . Mr. Russell drove by Lonnie's home the morning of the murder with his children in the car. Tammy Russell had provided information that Mr. Russell had stopped in front of Lonnie's house on the way to school, and that Mr. Russell had told her, upon dropping her off at school, that he was returning to Lonnie's house.
>
> . . . Mr. Russell's grandparents, Mr. And [sic] Mrs. Gainey, went to Lonnie's house looking for Mr. Russell on the morning of the murder. . . . [S]everal witnesses from Lonnie's neighborhood . . . had spoken with the Gainey's [sic] on the morning of the murder. The witnesses provided that the Gainey's [sic] were walking around the neighborhood, looking for Mr. Russell shortly after the police had arrived at the scene.
>
> Following an interview with an investigator, Mr. Marowitz and I were told that Mr. Russell denied being in Vallejo on the morning of the murder.

Anita Stringer Decl. at ¶¶ 4-10.

The newly-discovered factual predicates that petitioner claims justify a later start date are that:

(1) Randy Russell allegedly told his children in October 2004 that he knew petitioner was innocent of the murder and that he had information about the murder (Pet'r's Opp'n at 9); and

(2) Petitioner had previously been told by previously-retained habeas counsel Eric Conner that federal habeas relief was foreclosed forever due to Conner's failure to timely file a federal petition, and petitioner did not learn "until 2005" that a federal habeas petition could still potentially be pursued (*id.* at 8).

The second new fact relied on by petitioner is not a factual predicate of any of petitioner's claims. Petitioner argues that the misinformation provided by Conner excuses his failure to act immediately on the first new fact upon discovering it in late 2004. However, § 2244(d)(1)(D) does not provide for a later start-date based on when the factual predicate should have been diligently *acted on*, but when it could have been diligently *discovered*. While

5

1 Conner's conduct may provide a basis for equitable tolling (see discussion below), it is a not a
2 newly-discovered factual predicate of any of petitioner's claims.

3      As to Mr. Russell's alleged October 2004 statement to his children, the court concludes
4 that this fact does not justify a later start-date under § 2244(d)(1)(D). By petitioner's own
5 admission, the facts provided by Anita Stringer and quoted above regarding Mr. Russell were
6 known to him and to trial counsel before trial. Lonnie Stringer Decl. at ¶¶ 4-10. The vast bulk
7 of information implicating Mr. Russell as a basis for a third-party culpability defense and
8 forming the factual predicate for petitioner's claims that he is innocent because Mr. Russell
9 committed the crime, that trial counsel was ineffective for not pursuing the third-party
10 culpability defense, and that appellate counsel was ineffective for not arguing trial counsel's
11 ineffectiveness for not pursuing that third-party defense was therefore known, at the very latest,
12 at the time petitioner's appeals concluded in 1998. Time begins running under § 2244(d)(1)(D)
13 when the petitioner learns the "important" facts. *Hasan v. Galaza*, 254 F.3d 1130, 1154 n.3 (9th
14 Cir. 2001) (quoting with approval *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Petitioner
15 knew the important facts undergirding his general claim that Randy Russell, not petitioner,
16 committed the murder at the time of trial. While Mr. Russell's alleged October 2004 statements
17 may provide additional evidence in support of petitioner's claims, it does not change the contour
18 of those claims and is thus not a new factual predicate justifying a later start date under
19 § 2244(d)(1)(D). *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005) ("Section
20 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did,
21 then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for
22 any prisoner could reopen the judgment by locating any additional fact."); *Flanagan v. Johnson*,
23 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to
24 an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that
25 might, by implication, support his claim.").
26 ////

Accordingly, petitioner is not entitled to a later start-date under § 2244(d)(1)(D), and the limitations period began to run on May 4, 1998. Absent statutory or equitable tolling, the petition is untimely.

### B. Statutory Tolling

Because petitioner's state petitions were not filed until well after the federal limitations period had expired, they do not provide a basis for tolling the federal limitations period. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."). Thus, the instant petition is timely only if the limitations period must be tolled for equitable reasons.

### C. Equitable Tolling

As provided above, to toll the federal habeas limitations period for equitable reasons, the petitioner must show that: (1) he has been pursuing his rights diligently, and (2) some external extraordinary circumstance stood in his way and caused the untimeliness. In analyzing whether a petitioner has met this burden, the court views the facts alleged in the petition and facts supported by petitioner's other documentary submissions in the light most favorable to petitioner. *Porter v. Ollison*, 620 F.3d 952, 956 n.4 (9th Cir. 2010).

Petitioner contends that the limitations period should be tolled until October 2005 because of the alleged misconduct of Eric Conner, the attorney he retained to file his habeas petitions. Petitioner alleges as follows:

> On June 12, 1998, I retained Eric W. Conner, through my mother, Anita Stringer, to file any additional possible legal challenges, which I understood would be a writ of habeas corpus. . . .
>
> Based on [Conner's] evaluation [of the case] and subsequent discussions, I retained Eric W. Conner to file a writ of habeas corpus in the Federal Court on October 2, 1998. Again, my mother, Anita Stringer, was the primary point person for Mr. Conner . . . .
>
> As several months passed, I became concerned about the passage of time. I expressed concern to Mr. Conner and he gave my mother assurances that he had

7

> filed for an extension, which would allow him to file the Petition later than is normally allowed.
>
> On June 9, 2000, after two years had passed without any results, I asked my mother to release Mr. Conner from our contract and retrieve my files and my wife's jewelry.
>
> Mr. Conner returned the files, and my mother filed a claim for fee arbitration with the State Bar. My wife's jewelry was never returned. After an arbitration, the State Bar awarded fees of $5,500.00 to be returned. Collection of the arbitration award took approximately one year. My mother received the award in May of 2001.
>
> I never received any written work product from Mr. Conner . . .. Mr. Conner never filed any documents in state or federal court. Mr. Conner did not draft or file an extension in federal court. I since learned that no such extension is even allowed.
>
> Mr. Conner told me that I have no further recourse, and I would have to wait until I was paroled. As a result, I did not seek further legal assistance for several years. I believed this to be true and stopped trying to challenge the conviction. In 2003, I hired Steve Defilippis . . . to assist us in preparing for going through the parole consideration process. Mr. Defilippis was not initially doing anything relating to the conviction, as I still believed that nothing further could be done. It was not until the middle of 2004 that I told him about what had happened to the appeals. It was at that point that my mother provided the trial transcripts to him, and after reviewing them, my mother and I hired Mr. Defilippis to investigate the claims that I was innocent, and to file any challenge he could to the conviction. This occurred in the fall of 2004. We began an investigation, but in May of 2005, our investigator had to quite [sic] due to family problems of a personal nature. We quickly hired a new investigator, and after completing the investigation, filed this proceeding [in the Solano County Superior Court on January 5, 2006].

Lonnie Stringer Decl. at ¶¶ 18-24; *see also* Anita Stringer Decl. at ¶¶ 18-24.

Respondent argues that petitioner's facts show at most negligence on the part of Conner in calculating the federal filing deadline and thus do not present a sufficient basis for equitably tolling the limitations period. *Porter*, 620 F.3d at 959 ("Attorney negligence, including a miscalculation of a filing deadline, is not a sufficient basis for applying equitable tolling to the § 2244(d)(1) limitation period."). "However, attorney misconduct that is sufficiently egregious to meet the extraordinary misconduct standard can be a basis for applying equitable tolling." *Id.* (citing *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003)). Here, the court concludes that the facts alleged by petitioner show more than mere negligence, but rather affirmative and egregious

misconduct. According to petitioner, Conner misrepresented to petitioner and his mother that he had received an extension of time for filing the federal petition when, in fact, he had not. Over the next two years before he was discharged, Conner did not draft or file any work on behalf of petitioner. Conner was retained to handle petitioner's federal habeas petition on October 2, 1998, well before the expiration of the limitations period on May 4, 1999. Lying to a client about having obtained an extension of time to file the petition is misconduct sufficiently egregious to constitute an extraordinary circumstance beyond petitioner's control through the date that petitioner discharged Conner on June 9, 2000. *See Spitsyn*, 345 F.3d at 801 (finding egregious misconduct where habeas counsel was retained within the limitations period but completely failed to prepare and file the petition and did not return the petitioner's files until the limitations period had run). The court further finds that petitioner acted with diligence by retaining Conner to prepare the federal petition prior to the expiration of the federal filing deadline. Accordingly, petitioner has set forth facts establishing grounds for equitable tolling of the federal limitations period until June 9, 2000.

  Petitioner has failed to show, however, that he acted diligently in pursuing his rights following Conner's discharge. By his own admission, petitioner knew on or before June 9, 2000 that Conner had lied to him and his mother about obtaining an extension of time to file the federal petition. Petitioner knew that Conner had done no work for him, and petitioner's mother filed an arbitration to obtain a fee refund from Conner for that reason. Petitioner fails to explain why he unquestioningly relied on Conner's advice that he could no longer file a federal petition – obtaining no second opinion and performing no research into the matter himself – after he had learned that Conner had lied to him and entirely failed to competently represent him. While a petitioner need not show "maximum feasible diligence" to obtain equitable tolling, he must show "reasonable diligence." *Holland*, 130 S. Ct. at 2565. Petitioner's complete abandonment of his federal petition for the five-plus years after his discharge of Conner, based solely on the advice of an attorney he knew to be dishonest and incompetent, was not reasonably diligent. As

9

petitioner has not put forth facts warranting equitable tolling of the limitations period after June 9, 2000, his federal petition, filed on October 19, 2009, was not timely and respondent's motion to dismiss should be granted.

**IV.   Recommendation**

For the foregoing reasons, it is hereby RECOMMENDED that:

1. Respondent's August 20, 2010 motion to dismiss be granted; and

2. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 11, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE